UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Employers Mutual Casualty Company,

Plaintiff,

v.

Wendland & Utz, Ltd.; Terry Lynn Djonne; Wen-Po Daniel Su; Man-Mei Nadine Su; Frederick Banfield; and Heartman Insurance Agency,

Defendants.

Civ. File No. 01-46 (PAM/JGL)

**MEMORANDUM AND ORDER**

---

This matter is before the Court on Plaintiff's Motion for Summary Judgment in this insurance coverage dispute.[1] For the reasons that follow, the Motion for Summary Judgment is granted.

## BACKGROUND

On January 21, 1998, an attorney at the law firm of Wendland & Utz in Rochester was involved in an automobile accident in which he struck and seriously injured Dr. Wen-Po Daniel Su. At the time of the accident, the attorney was on his way to pick up a witness for

---

[1] Only Defendant Wendland & Utz, Ltd. responded to the Motion. Defendants Heartman Insurance Agency and Frederick Banfield appeared at the hearing and joined Wendland & Utz's response to the Motion. The Court also notes that even though it appears that both Wendland & Utz and Heartman and Banfield served an answer and counterclaims, neither of these documents was actually filed with the Court. Wendland & Utz did file an Amended Answer, but its original Answer has not been docketed.

FILED MAY 13 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD MAY 13 2002
DEPUTY CLERK

a bankruptcy hearing in the Twin Cities, and was thus driving his car in the scope of his employment. Dr. Su brought suit against the attorney. The complaint was later amended to include the law firm.

Wendland & Utz tendered the claim to its insurance company, Plaintiff Employers Mutual Casualty Company ("EMC"). EMC denied coverage, and brought the instant lawsuit to declare its obligations under the businessowners insurance policy it issued to Wendland & Utz. In the meantime, Wendland & Utz settled the case with Dr. Su for $1 million, the limitation of liability in its policy with EMC. The errors and omissions insurance carrier for Heartman Insurance Agency ("Heartman"), the agency that issued the EMC policy to Wendland & Utz, supplied the money for the settlement in some sort of loan arrangement.

According to Wendland & Utz, EMC must pay the $1 million claim because both the insurance agent who wrote the policy and Wendland & Utz intended for the policy to cover the use of employee vehicles during the scope of employment. It is undisputed that the policy, as written, unambiguously does not cover such use. Wendland & Utz seeks to reform the insurance policy, or in the alternative, claims that EMC negligently or intentionally misrepresented the terms of the policy to the agent and thus should be estopped from refusing to honor the terms as represented. EMC asserts that no genuine issues of fact exist on Wendland & Utz's claims, making summary judgment appropriate.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Misrepresentation

Wendland & Utz's misrepresentation claim arises out of their insurance agent's contention that someone at EMC informed him that Wendland & Utz's policy covered

employee-owned vehicles. According to Frederick "Fritz" Banfield, the insurance agent responsible for the Wendland & Utz account, he and Craig Wendland, President of Wendland & Utz, had a conversation in which Mr. Wendland specifically asked about whether a secretary driving her own car to perform some law firm task would be covered in the event of an accident. Mr. Banfield called EMC, and according to him, someone at EMC told him that the policy covered such uses of employee-owned cars. Mr. Banfield does not recall to whom he spoke at EMC, and no underwriters at EMC could remember having such a conversation with Mr. Banfield. In fact, the two underwriters in charge of the Wendland & Utz policy specifically denied that they would have provided such information to Mr. Banfield without looking at the policy, and had they looked at the policy, it would have been clear that the policy did not cover the use of employee-owned vehicles.

As an initial matter, it is not clear whether Wendland & Utz is claiming negligent misrepresentation or intentional misrepresentation.[2] Regardless, however, the nature of the claim actually lies in estoppel. Wendland & Utz seek to estop EMC from claiming that the loss is not covered because of the alleged misrepresentation. To recover on this claim, Wendland & Utz must show that its reliance on EMC's alleged statement regarding coverage was reasonable. Northern Petrochem. Co. v. United States Fire Ins. Co., 277 N.W.2d 408, 410 (Minn. 1979). According to EMC, because the policy language unambiguously did not

[2] The counterclaim states that EMC "fraudulently and negligently" misrepresented the scope of Wendland & Utz's coverage. (Am. Counterclaim ¶ 6.)

cover employee automobiles, any reliance on an alleged representation to the contrary is unreasonable as a matter of law. See Anderson v. Minnesota Ins. Guar. Ass'n, 534 N.W.2d 706, 709 (Minn. 1995) ("[R]eliance on any explanations contrary to the unambiguous meaning of the policy language is, as a matter of law, unreasonable.").[3]

Although Wendland & Utz implies that the insurance policy is not as clear as it might be with regard to an employee-owned automobile exclusion, Wendland & Utz does not argue that the policy is ambiguous on this point. Indeed, such an argument would be fruitless because the policy clearly does not contain an endorsement for vehicles not owned by the business, and without such an endorsement, such vehicles are unambiguously excluded from coverage. Because the policy is unambiguous, and because Mr. Banfield and Heartman had access to the complete policy and could, by reading the policy, discover that the policy did not cover employee-owned vehicles, any reliance by Mr. Banfield on representations to the contrary is not reasonable as a matter of law. While an argument might be made that Wendland & Utz reasonably relied on Mr. Banfield's misstatements regarding coverage and thus that Mr. Banfield and Heartman should be required to provide coverage (which is in fact

---

[3] At the hearing on EMC's Motion, counsel for Wendland & Utz argued that EMC's assertions about the reasonableness of the reliance should not be considered by the Court because these assertions were made for the first time in EMC's reply memorandum. The Court notes that EMC's reply memorandum was signed and presumably served on Wendland & Utz at the end of March, and that the hearing on EMC's Motion was held on April 25. Wendland & Utz thus had almost one month to prepare to counter EMC's arguments regarding reasonable reliance. Wendland & Utz offered the Court no contrary authority, or indeed any reason why EMC's arguments in this regard are not legally sound.

what ultimately transpired in this case), that claim is not before the Court.

### C. Reformation

Wendland & Utz contends that the Court should reform the policy to include coverage for employee-owned vehicles. According to Wendland & Utz, reformation is appropriate pursuant to the doctrine of mutual mistake. In Minnesota, a court may reform a written contract if

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties . . . .

Nichols v. Shelard Nat'l Bank, 294 N.W.2d 730, 734 (Minn. 1980). Although the parties debate the correct standard of proof for reformation, the caselaw is clear that the party seeking reformation must prove all of the elements by clear and convincing evidence. See Leamington Co. v. Nonprofits' Ins. Ass'n, 615 N.W.2d 349, 354 (Minn. 2000); Fid. & Guar. Ins. Co. v. Global Techs., Ltd., 117 F. Supp. 2d 911, 914 (D. Minn. 2000) (Montgomery, J.). The party seeking reformation bears an "onerous" burden of proof. Tollefson v. Am. Family Ins. Co., 226 N.W.2d 280, 284 (Minn. 1974). Both parties contend that summary judgment in their favor is appropriate on this issue.

Wendland & Utz has failed to meet its burden to show by clear and convincing evidence that reformation is appropriate. The evidence is at best conflicting as to any "agreement" between Wendland & Utz and Mr. Banfield as to the scope of coverage. Although Mr. Banfield testified that he recalled a specific conversation about an employee

driving her car on company business (Banfield dep. at 48-49), Mr. Wendland is much more equivocal. The most Mr. Wendland could offer was that he "believe[d]" that he "would have" discussed such risk with Mr. Banfield during their yearly review of the policy. (See, e.g., Wendland dep. at 32.) Mr. Wendland only specifically remembers asking Mr. Banfield, "Are we fully covered?" (Id. at 27.) Such a broad question cannot be construed as indicating that Mr. Wendland and Mr. Banfield specifically agreed that the law firm would be covered for the use of employee-owned vehicles on firm business. Thus, Wendland & Utz has failed to establish the requisite agreement between the parties as to the scope of coverage, and its claim for reformation must fail.

**CONCLUSION**

The Court is convinced that the result in this case is not only legally correct but also logical and reasonable. Here, it is clear that the insurance agent made a mistake. Regardless of the existence or lack thereof of an agreement between Wendland & Utz and Mr. Banfield, Mr. Banfield believed that Wendland & Utz needed insurance coverage for the use of employee-owned vehicles. He failed to examine the policy to determine whether such coverage existed, and he undisputedly did not request that EMC provide that coverage. It is plainly inequitable under these circumstances to force EMC to provide coverage it was never requested to provide and which was never paid for. As in Frank v. Winter, 528 N.W.2d 910, 915 (Minn. Ct. App. 1995), Wendland & Utz is asking the Court to find that EMC is Mr. Banfield's second errors and omissions carrier. The Court declines that

invitation.

Accordingly, for the foregoing reasons, and upon all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment (Clerk Doc. No. 30) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 10, 2002

Paul A. Magnuson
United States District Court Judge

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion*. Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*